UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                  )
PHOTOGRAPHIC ILLUSTRATORS          )
CORPORATION,                       )
                                  )
                Plaintiff,         )
                                  )
v.                                 )          Civil Action
                                  )          No. 15-13546-PBS
A.W. GRAHAM LUMBER, LLC,           )
                                  )
                Defendant.         )
_____)

## MEMORANDUM AND ORDER

June 27, 2016

Saris, C.J.

## INTRODUCTION

Photographic Illustrators Corporation (PIC) brought this action against A.W. Graham Lumber, LLC (Graham), alleging copyright infringement in violation of 17 U.S.C. § 501 (Count I); removal of copyright maintenance information in violation of 17 U.S.C. § 1202 (Count II); and violations of Massachusetts General Laws Chapter 93A (Count III). All claims concern photographs PIC took of lighting fixtures. The defendant moves to dismiss based on lack of personal jurisdiction, or in the alternative, to transfer the case to Kentucky. After a hearing and limited jurisdictional discovery, I find that the Court lacks personal jurisdiction over the defendant. The Court

1

**TRANSFERS** the case to the Eastern District of Kentucky under 28
U.S.C. § 1631.

## FACTUAL BACKGROUND

The following facts are taken from the complaint (Docket
No. 1) and the affidavit of Albert Woodson Graham, co-owner of
Graham Lumber (Docket No. 16). The Court takes PIC's evidentiary
proffers as true, and construes them in the light most favorable
to its claims. The facts are uncontested unless otherwise noted.

Plaintiff PIC is a Massachusetts corporation specializing
in photography. Its services include the photography of consumer
products for catalogs, advertising, and packaging. Osram
Sylvania, Inc. (OSI), retained Paul Picone, a photographer for
PIC, to photograph its lighting fixtures. OSI then allegedly
provided these photographs to a wholesaler, Orgill, Inc.
(Orgill), who in turn allegedly made the photographs available
to the defendant Graham. It is PIC's practice to include the
name of the author (Paul Kevin Picone) and the copyright owner
(P.I. Corp.) on PIC images. It followed this practice for the
allegedly infringing photographs at issue in this case.

Defendant Graham is a Kentucky limited liability company,
with its only place of business in Flemingsburg, Kentucky. It
sells lumber and other building supplies. As a family-owned and
-operated business, Graham has approximately thirty employees,
who all live in Kentucky. All of its business records are

2

maintained in Kentucky. Graham is not licensed to do business in Massachusetts, and does not have any employees or agents here. Graham does not have an office, telephone number, or mailing address in Massachusetts, and has never advertised in the Commonwealth. Graham does not own any real or personal property in Massachusetts, and does not have any trans-shipment points, warehouses, or other storage facilities here.

In addition to its brick and mortar store, Graham also maintains a website, www.grahamlumber.com, where it offers its products for sale. The website is accessible to residents in all fifty states, including Massachusetts. Most website orders are fulfilled through Orgill, the previously mentioned wholesaler. Under a 2013 agreement between Orgill and Graham, orders placed through www.grahamlumber.com ship from one of Orgill's facilities directly to the online customer. Orgill maintains facilities in Georgia, Utah, Texas, Missouri, and as far north as West Virginia, but has no facilities in Massachusetts. Products sold pursuant to the Orgill-Graham agreement never come into Graham's possession.

Graham reports $7-8 million in annual sales, 99.9% of which are in-person or telephone sales. Over the past two years, Graham has only made $8,391 in website sales. More than half of all internet sales are to in-state customers. Only one sale since 2005, as far back as the defendant's records reach, has

been to Massachusetts—that of a shovel for $21.99, plus $16.99
in shipping costs. The shovel sale was made on October 25, 2015,
roughly two weeks <u>after</u> PIC filed the complaint in this case. No
emails outside of those concerning the present litigation were
exchanged between Graham and Massachusetts residents.

Plaintiff alleges that Graham's website included PIC images
on at least thirty-two separate web pages without PIC's
authorization or other license to do so, and that Graham did not
receive the images from PIC itself. Further, the images on
Graham's website did not include the name of the author or the
copyright owner, information which the plaintiff alleges was
removed with the aid of Adobe Photoshop or some other similar
image editing software. Defendant moves to dismiss under Federal
Rules of Civil Procedure 12(b)(2) and 12(b)(3), for lack of
personal jurisdiction and improper venue, or alternatively to
transfer venue to Kentucky pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

### I.    <u>Standard of Review</u>

When a defendant files a Rule 12(b)(2) motion to dismiss
based on lack of personal jurisdiction, the plaintiff "bears the
burden of establishing that the district court has personal
jurisdiction over [the defendants]". <u>Cossart v. United Excel
Corp.</u>, 804 F.3d 13, 18 (1st Cir. 2015) (internal quotation marks
and citation omitted). In reviewing the facts, courts "take the

plaintiff's evidentiary proffers as true and construe them in the light most favorable to the plaintiff's claim." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014). Courts also consider "uncontradicted facts proffered by the defendant." Id. The plaintiff "must put forward evidence of specific facts to demonstrate that jurisdiction exists." A Corp. v. All Am. Plumbing, 812 F.3d 54, 58 (1st Cir. 2016) (internal quotation marks and citation omitted).

## II.  **Personal Jurisdiction**

The plaintiff argues that the defendant can be brought before a Massachusetts court on a theory of specific jurisdiction. "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (citing Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

To exercise specific personal jurisdiction, the Court must find "that the Massachusetts long-arm statute grants jurisdiction and, if it does, that the exercise of jurisdiction under the statute is consistent with the Constitution." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002). Previously, only the latter was functionally a part of the personal jurisdiction analysis because the First Circuit had held that Massachusetts's long-arm

statute was coextensive with the Constitution. <u>Phillips v.
Prairie Eye Ctr.</u>, 530 F.3d 22, 26 (1st Cir. 2008) (explaining
that "the Supreme Judicial Court of Massachusetts has
interpreted the state's long-arm statute as an assertion of
jurisdiction over the person to the limits allowed by the
Constitution of the United States" (internal quotation marks and
citation omitted)). However, the First Circuit recently held
that the Massachusetts long-arm statute may "impose more
restrictive limits on the exercise of personal jurisdiction than
does the Constitution." <u>Copia Commc'ns, LLC v. AMResorts, L.P.</u>,
812 F.3d 1, 3 (1st Cir. 2016). Here, because neither party
discusses the long-arm statute, the parties have waived this
argument, and the Court moves "directly to the constitutional
inquiry." <u>Id.</u>

The Due Process Clause requires a defendant to "have
certain minimum contacts with [a forum state] such that the
maintenance of the suit does not offend traditional notions of
fair play and substantial justice." <u>Int'l Shoe Co. v.
Washington</u>, 326 U.S. 310, 316 (1945) (internal quotation marks
and citation omitted). The First Circuit utilizes a three-part
test to establish the minimum contacts required for specific
jurisdiction. <u>See</u> <u>Cossart</u>, 804 F.3d at 20. The three elements
are relatedness, purposeful availment, and reasonableness:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995). "Central to each step . . . are the contacts which are attributable to [the] defendant in this case." Id. "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

### A. Relatedness

The relatedness element endeavors to focus "the court's attention on the nexus between a plaintiff's claim and the defendant's contacts with the forum." Sawtelle, 70 F.3d at 1389. Put another way, the plaintiff's claims must arise out of, or relate to, the defendant's forum state activities. Cossart, 804 F.3d at 20. This requirement "ensures that the defendant will not be subject to personal jurisdiction unless its contacts with the forum state caused the alleged harm." Edvisors Network, Inc. v. Educ. Advisors, Inc., 755 F. Supp. 2d 272, 280 (D. Mass. 2010). The defendant concedes that the plaintiff has satisfied the relatedness prong because the defendant's website is the

source of the alleged copyright infringement, and "admittedly is available to Massachusetts residents." Docket No. 15, at 11; see, e.g., Edvisors Network, 755 F. Supp. 2d at 281 (holding the relatedness element was met where the claimed injury arose out of the publication of a website in Massachusetts, which allegedly caused harm to the plaintiff in Massachusetts).

However, digging deeper, the defendant argues that the single shovel sale to a Massachusetts resident is not related to the plaintiff's claims because it is "not the subject of any of the allegedly infringing images," and, thus, should not be considered in the specific jurisdiction analysis. Docket No. 15, at 11-12. Additionally, the First Circuit has explained that "in most cases, contacts coming into existence after the cause of action arose will not be relevant," because "causation is central to the relatedness inquiry." Harlow v. Children's Hosp., 432 F.3d 50, 62 (1st Cir. 2005). The proper focus is instead "on those contacts leading up to and surrounding the claimed injury." Id. at 61; see also Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 66 (1st Cir. 2002) (noting that for "purposes of specific jurisdiction, contacts should be judged when the cause of action arose").

Here, the shovel sale took place roughly two weeks after the plaintiff filed the complaint, and months after the cause of

action first arose. The Court agrees with the defendant that the shovel sale did not cause, and is not otherwise related to, the plaintiff's copyright claims. Therefore, it is not relevant to the specific jurisdiction inquiry.

### B. Purposeful Availment

The purposeful availment prong considers whether the defendant has engaged in voluntary forum activity that made it foreseeable to the defendant that he could be brought to Massachusetts. Copia Commc'ns, 812 F.3d at 5. "The function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle, 70 F.3d at 1391 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)). Voluntariness exists when a defendant reaches out to the plaintiff's state of residence to create a relationship. Phillips Exeter Acad., 196 F.3d at 292. Even where a Court finds voluntariness, "the purposeful availment prong of the jurisdictional test investigates whether the defendant benefitted from those contacts in a way that made jurisdiction foreseeable." Id. "The focus of the purposeful availment inquiry is the defendant's intentionality." Adams v. Adams, 601 F.3d 1, 6 (1st Cir. 2010).

Plaintiff relies on Zippo Manufacturing Company v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), for its

contention that the defendant has purposefully availed itself of the privilege of conducting business in the Commonwealth through the website www.grahamlumber.com. Zippo created a sliding scale approach to analyze whether internet activity can serve as a basis for personal jurisdiction. See id. at 1124. The scale ranges from passive websites, "where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions," to highly interactive, commercial websites, "where a defendant clearly does business over the Internet." Id. Under the sliding scale test, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." Id.

Plaintiff argues that the defendant's website "indisputably lies at the active end of the scale," because it "offers goods for sale over the Internet to out-of-state users." Docket No. 18, at 11. Defendant contends that its internet activity does not satisfy the purposeful availment element, even though the website is accessible to Massachusetts residents, because the only evidence of commercial activity with the Commonwealth is the single shovel sale. After jurisdictional discovery, the parties found no emails between Graham and Massachusetts residents, and no other sales into the Commonwealth. As

discussed above, the shovel sale is not a relevant contact for
the specific jurisdiction analysis in this case. Putting aside
the shovel, the plaintiff argues that an offer for sale over the
internet available to residents of the forum is sufficient to
establish purposeful availment.

Although the First Circuit has not explicitly adopted the
Zippo sliding scale test, it has explained that "the mere
existence of a website that is visible in a forum and that gives
information about a company and its products is not enough, by
itself, to subject a defendant to personal jurisdiction in that
forum." McBee v. Delica Co., Ltd., 417 F.3d 107, 124 (1st Cir.
2005). The McBee court emphasized:

> Something more is necessary, such as interactive
> features which allow the successful online ordering of
> the defendant's products. The mere existence of a
> website does not show that a defendant is directing its
> business activities towards every forum where the
> website is visible; as well, given the omnipresence of
> Internet websites today, allowing personal jurisdiction
> to be premised on such a contact alone would eviscerate
> the limits on a state's jurisdiction over out-of-state
> or foreign defendants.

Id. (internal quotation marks and citations omitted). In the
general jurisdiction context, the First Circuit has held that
the court lacks jurisdiction where the website describing the
defendant's services is "available to anyone with Internet
access and does not target [Massachusetts] residents in

particular." Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 35 (1st Cir. 2010).

Twenty years post-Zippo, courts continue to search for a limiting principle beyond the mere fact that an interactive website is accessible in all fifty states. As one court stated, "without some limiting principle with regard to purposeful availment, the simple fact that virtually every business now has a website would eviscerate the limits on personal jurisdiction over out-of-state defendants." Media3 Techs., LLC v. CableSouth Media III, LLC, 17 F. Supp. 3d 107, 112 (D. Mass. 2014) (citing Cossaboon, 600 F.3d at 35). The Seventh Circuit has persuasively held that, for purposes of specific jurisdiction, "[b]eyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way target the forum state's market." Be2 LLC v. Ivanov, 642 F.3d 555, 558-59 (7th Cir. 2011) (emphasis in original). The Seventh Circuit concluded that where the defendant "merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." Id. at 559 (collecting cases).

Defendant Graham is a family-owned, brick and mortar hardware store located in Kentucky. Although www.grahamlumber.com is a commercial website that allows

Massachusetts residents to order the defendant's products online, the website only accounts for 0.01% of the defendant's total sales, and more than half of all online sales are to Kentucky residents. There were no sales of the lighting fixtures depicted in the allegedly infringing photographs into Massachusetts. The website is accessible to residents in all fifty states, and does not target Massachusetts in any way. Because there is no evidence that the defendant engaged in advertising, marketing, or other activity evincing intentionality, beyond merely making its website accessible to Massachusetts residents, it is a very close call whether the defendant has purposefully availed itself of "the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." <u>Sawtelle</u>, 70 F.3d at 1389. Ultimately, I need not resolve the question because I conclude that the exercise of specific personal jurisdiction in this case would not be reasonable under the gestalt factors.

**C. Reasonableness**

To determine whether the exercise of specific personal jurisdiction would be reasonable, courts consider the five "gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum
> state's interest in adjudicating the dispute, (3) the
> plaintiff's interest in obtaining convenient and
> effective relief, (4) the judicial system's interest in
> obtaining the most effective resolution of the
> controversy, and (5) the common interests of all
> sovereigns in promoting substantive social policies.

Noonan v. Winston Co., 135 F.3d 85, 89 n.2 (1st Cir. 1998).

These factors are "are not ends in themselves, but they are,

collectively, a means of assisting courts in achieving

substantial justice." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir.

1994). The reasonableness consideration is one that, at its

core, considers "fundamental fairness." Ticketmaster-N.Y., Inc.

v. Alioto, 26 F.3d 201, 212 (1st Cir. 1994).

The gestalt factors "play a larger role in cases where the

minimum contacts question is very close." Adelson v. Hananel,

510 F.3d 43, 51 (1st Cir. 2007). "A distant court cannot

constitutionally exercise in personam jurisdiction over a non-

resident defendant at the behest of a plaintiff who can muster

only the most tenuous showings of relatedness and purposefulness

if . . . forcing the defendant to defend in the forum would be

plainly unreasonable." Ticketmaster, 26 F.3d at 210.

Furthermore, "in certain circumstances, unreasonableness can

trump a minimally sufficient showing of relatedness and

purposefulness." Id.

Here, the defendant argues that it would be unduly

burdensome to force it, as a small, family-owned hardware store,

14

to defend the case in Massachusetts, when it's "center of gravity" is in Kentucky. Docket No. 15, at 13; Ticketmaster, 26 F.3d at 210 (noting that "most of the cases that have been dismissed on grounds of unreasonableness are cases in which the defendant's center of gravity, be it place of residence or place of business, was located at an appreciable distance from the forum"). The plaintiff cites to Pritzker v. Yari for the proposition that this factor is "only meaningful where a party can demonstrate some kind of special or unusual burden." 42 F.3d at 64. PIC contends that Graham does not face a "special or unusual burden," beyond the typical expense associated with defending a case in a foreign state. Id.

Under First Circuit law, the burden on the defendant, "alone among the gestalt factors, is always a primary concern." Ticketmaster, 26 F.3d at 210 (internal quotation marks omitted). The Pritzker court explained that "the concept of burden is inherently relative." 42 F.3d at 64. The Pritzker court ultimately concluded that, in the "modern era," traveling between New York and Puerto Rico did not create an "especially ponderous burden" for the "business travelers" involved in that case. Id.

Here, the defendant is located in Kentucky, makes the overwhelming majority of its sales in person or over the phone, and has a website with minimal commercial activity (both as a

whole and to the forum state). In contrast to the defendant in
Pritzker, Graham has successfully demonstrated that defending
the case in Massachusetts would pose a special or unusual
burden, particularly in light of the plaintiff's weak showing,
at best, on purposeful availment.

The plaintiff also maintains that the exercise of specific
jurisdiction would be reasonable because the plaintiff's "choice
of forum must be accorded a degree of deference with respect to
the issue of its own convenience." Sawtelle, 70 F.3d at 1395.
Here, however, the plaintiff's interest is not as compelling
because key witnesses and documents related to how Graham
obtained the allegedly infringing photographs are more likely to
be found in Kentucky. See Ticketmaster, 26 F.3d at 211 (finding
that this factor was "at best a makeweight" because plaintiff's
choice of forum was not where all of the witnesses were
located).

Next, the plaintiff contends that the judicial system has
an interest in resolving the case in Massachusetts, given this
Court's familiarity with the facts from the prior, related case
against Orgill. See Photographic Illustrators Corp. v. Orgill,
118 F. Supp. 3d 398 (D. Mass. 2015). PIC has filed more than
thirty suits in this District against wholesalers like Orgill
and downstream retailers like Graham. While this is one factor
the Court considers, on balance, PIC's litigation strategy is

insufficient in a case involving only a website to extend personal jurisdiction over a small, out-of-state defendant based on such a tenuous showing of purposeful availment.

Finally, the plaintiff argues that Massachusetts has a significant interest in adjudicating this dispute, and in protecting its substantive social policies. There is social utility in allowing "a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors." Sawtelle, 70 F.3d at 1395. Yet, when "the main claims against [the defendant] are under the federal copyright statute, there are no compelling state interests for keeping the action" against the defendant in Massachusetts. Alicea v. LT's Benjamin Records, 762 F. Supp. 2d 299, 309-10 (D. Mass. 2011) (emphasis in original).

Furthermore, I find that there is a substantive social policy against exercising personal jurisdiction in this case because it would hale the defendant into court in a distant forum merely because its website is accessible in every state. It would have the adverse effect of discouraging small mom-and-pop retailers, such as the defendant, from creating websites for their local customers for fear of opening themselves up to copyright litigation across the nation. "Although the concept of long-arm jurisdiction must adjust as technological advances render blurry the boundaries between the states, we must heed

17

the warning that it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." Sawtelle, 70 F.3d at 1395-96 (internal quotation marks and citations omitted).

It bears emphasizing that this is not a case where the plaintiff purchased a defective product through a website from an out-of-state defendant. Graham did not benefit in any way from posting the allegedly infringing photographs on its website because there were no sales of the lighting fixtures depicted to Massachusetts customers, and the defendant did not advertise in Massachusetts.

## III. **Transfer**

The defendant seeks a transfer of this action to Kentucky pursuant to 28 U.S.C. § 1404(a). However, where a court lacks personal jurisdiction, transfer under § 1404 "is clearly inappropriate." Albion v. YMCA Camp Letts, 171 F.3d 1, 2 (1st Cir. 1999). On the other hand, 28 U.S.C. § 1631 allows transfer when a court lacks personal jurisdiction. Fed. Home Loan Bank of Boston v. Moody's Corp., No. 14-2148, 2016 WL 1732656, at *1, *10 (1st Cir. May 2, 2016). A court can *sua sponte* order transfer under 28 U.S.C. § 1631, which states, in relevant part, where the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or

appeal could have been brought." 28 U.S.C. § 1631; see also

Narragansett Elec. Co. v. EPA, 407 F.3d 1, 8 (1st Cir. 2005).

Under § 1631, courts have a choice between transfer and

dismissal, but "transfer is presumptively preferable because the

dismissal of an action or appeal that might thrive elsewhere is

not only resource-wasting but also justice-defeating." Britell

v. United States, 318 F.3d 70, 74 (1st Cir. 2003). This

presumption is rebuttable, "[o]nly if an inquiring court

determines that a transfer is not in the interest of justice,"

based on the totality of the circumstances. Id. Examples of

transfers not in the interest of justice include where "an

action or appeal is fanciful or frivolous," where "transfer

would unfairly benefit the proponent," or where transfer would

"unduly burden the judicial system." Id. at 74-75.

This case could have been brought in the Eastern District

of Kentucky at the time the action was filed. It arises under

federal copyright laws, satisfying the issue of subject matter

jurisdiction. See 28 U.S.C. § 1338. Defendant is a resident of

Kentucky, so personal jurisdiction and venue would also have

been appropriate. See 28 U.S.C. § 1391(b)(1) ("A civil action

may be brought in a judicial district in which any defendant

resides, if all defendants are residents of the State in which

the district is located.").

Here, there is no evidence that dismissal would be in the interest of justice. The plaintiff's claims are not fanciful or frivolous. <u>See</u> <u>Photographic Illustrators Corp.</u>, 118 F. Supp. 3d at 411 (denying summary judgment in part in the related case against the wholesaler Orgill). Transfer would not unfairly benefit the defendant, which originally requested outright dismissal, and there is no indication that transfer would unduly burden the judicial system. Therefore, I find that the presumption in favor of transfer is not rebutted. Accordingly, the Court transfers the case to the Eastern District of Kentucky, where Graham Lumber is located.

**<u>ORDER</u>**

The Court finds that it lacks personal jurisdiction over the defendant and **<u>TRANSFERS</u>** the case to the Eastern District of Kentucky under 28 U.S.C. § 1631.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge